## WEBB-SUMNER OIL MILL v. L. B. LOVITT.

Western Section.   March 2, 1928.

Petition for Certiorari overruled by Supreme Court, June 30, 1928.

W. F. Murrah and John R. Walker, of Memphis, for complainant.
Ben W. Kohn, of Memphis, for defendant.

HEISKELL, J.   Complainant, Webb-Sumner Oil Mill, a corporation organized under the laws of the State of Mississippi, having its principal office at Sumner, Mississippi, and engaged in the manufacture of cotton seed products, filed its original bill on June 5, 1923, against defendant, L. B. Lovitt, doing business as L. B. Lovitt & Co., who was engaged in the business of buying, selling and dealing in cotton seed products at Memphis, Shelby County, Tennessee.

Complainant sued to recover $1770.23, which is the alleged difference between the value of cotton seed cake delivered and the value of the cake of the quality specified in the contract, together with interest from July 15, 1920, under a contract made and entered into with defendant, for the purchase of 300 tons of loose cotton seed cake at $69.50 per ton, 100 tons to be shipped in March, 100 in April, and 100 tons in May, 1920, delivered at Webb, Mississippi; and under a contract made with defendant to purchase 200

tons of loose slab cotton seed cake at $69.50 per ton to be delivered in April, 1920, at Webb, Mississippi; and under a contract made with defendant to purchase 400 tons of loose slab cotton seed cake at $68.50 per ton, shipment to commence immediately and to be delivered at Webb, Mississippi.

Appellee answered the bill, stating that these differences were settled by arbitration, and denied owing appellant anything whatever.

Each of said contracts specify that the quality of the cotton seed cake should be prime in color and odor and contain forty-three per cent protein, and that the cake should be nice bright cake, suitable for blending, and if not, is to be rejected outright, and not· to be taken at a discount.

Complainant purchased the cake for the purpose of blending it with an inferior dark cake, in order to make a salable meal. The proof shows that the word "prime" means that the cake shall be yellow and not brown.

Complainant rejected certain cars outright, some 150 tons of cake were never shipped. As to 423½ tons, complainant objected to the quality as not in compliance with the contract and notified' the defendant upon arrival of the shipments. Under an understanding with defendant, however, complainant agreed to accept, pay for and use these cars, subject to adjustment or allowance to be agreed on later.

The claim for the amount that should have been allowed by reason of defective quality of this 423½ tons is all that is in controversy in this suit. The cake rejected and that not delivered is not involved.

Complainant insisted on a recovery of $4.18 per ton for this 423½ tons, while the defendant denied any liability whatever. The Chancellor allowed a decree in favor of complainant for $2 per ton, $847 with interest from filing of the bill, and both sides appealed and have assigned errors. The complainant objects to the decree because it allows only $2 instead of $4.18 per ton for the breach of· contract and because it allows interest only from the filing of the bill. The defendant assigns error as follows:

## I.

The Chancellor erred in failing to decree that the arbitration of the differences existing and arising out of the contracts which were arbitrated estopped complainant from instituting this action. Rec., p. 54, Exhibit A-1 Fitzhugh, Rec., p. 100 Campbell, Exhibit 9 Fitzhugh Deposition.

## II.

The decree of the Chancellor is against the weight of the evidence. Rec., p. 107 Lovitt; Rec., p. 21 Fitzhugh.

## III.

The decree of the Chancellor is contrary to the law.

## IV.

The Chancellor erred in rendering a judgment based upon a mere demand unsupported by any basis or calculation or rule of law finding damages, which was in the form of a letter sent to defendant by complainant. Rec. p. 126.

It is admitted by both parties that the contract bound them in case of disagreement to submit their differences to arbitration by the board of arbitrators of of the Interstate Cotton Seed Crushers Association, and in March, 1921, an agreement was drawn up, but through inadvertence and without fault of complainant it submitted to the arbitration board only "All differences account of nondelivery of cake" under said contract. The arbitrators testify that this is all they considered. They reported in favor of the defendant on this issue on the ground that the complainant had not purchased cake in the market to take the place of the cake not delivered, in order to fix the difference between market and contract price. When it was discovered that the board did not take into consideration the question presented in this suit, as to the defective quality of the 423½ tons of cake, complainant tried to procure an arbitration as to this matter, but the association had gone out of existence and the board of the reorganized association refused to consider any matters arising before August 1, 1921. It is clear that complainant is not precluded from prosecuting the present suit by reason of said arbitration or agreement to arbitrate. The Chancellor so held and we think his holding correct.

The question then is whether or not complainant is entitled to recover by reason of the defective quality of the 423½ tons of cake conditionally accepted, and if so, how much. Complainant's claim of $4.18 per ton is worked out in this way. Witnesses for complainant say they had contracted their cake at six and seventy-five hundredths per unit of ammonia and as it analyzed six and fifty hundredths per cent of ammonia, this gave a value of $43.88 per ton; but it was so dark that it was unsalable; that before that time the defendant had furnished a bright cake, of which one ton blended with two of complainant's cake gave a salable meal; that

on account of the quality of this 423½ tons, it required that one ton be blended with each ton of complainant's cake; that the average price to be paid defendant, under the contracts, was $68.99 per ton, and the difference between blending one-third and one-half made a difference in cost of between $56.43 and $52.25 per ton, or $4.18.

The Chancellor in his finding of facts quotes at length from correspondence between complainant and defendant during the time this cake was being delivered and objections being made to the grade thereof, and he concludes that this, along with complainant's evidence presented in this record, shows that the cake was defective; but he says "The method of computing the damage at $4.18 per ton is somewhat theoretical, and its accuracy would depend on the character or color of complainant's own cake. If complainant's cake was darker than usual, then, of course, it would take more than one ton of defendant's cake to one ton of complainant's to make marketable meal." The Chancellor finds the basis for the amount of his decree in a letter of complainant to defendant, dated May 4, 1920, which is as follows:

. "Referring to our previous notice that we would file claim on the following cars of cotton seed cake (set forth by initial and number, nine cars). Beg to advise that we think we should have at least an allowance of $2 per ton on this cake and make that as our claim. Please let us know if this is agreeable to you and we will send you invoice accordingly," etc.

Complainant on June 4, 1920, in another letter withdraws what is called the offer of compromise of May 4th. The Chancellor thought the letter of May 4, 1920, was not an offer of compromise, but a statement of a claim and that complainant's estimate of damages at that time was of more weight than calculations made when the proof was taken in the case in 1925.

Both sides object to the adoption by the Chancellor of this basis for the amount of the decree. Complainant insists that it was an offer not accepted, was withdrawn, and that complainant should not be bound by it. The defendant says complainant should not be allowed to fix the amount of its claim against defendant. Both contentions involve somewhat of misconception of the finding of the Court. The ruling is rather this: The proof shows that complainant is entitled to recover, but the proof as to amount is not as satisfactory as might be. Still complainant might be entitled to recover more than $2, but for this letter stating its estimate of damage in May, 1920; therefore, its recovery will be limited to its estimate at that time. This answers the objection of defendant that complainant is allowed to fix the amount of recovery. As to the objection of complainant, the idea is not that complainant is lim-

ited, as upon the theory of an accepted offer, but that now, years after the transaction, complainant is claiming that the value of defendant's cake failed to the extent of $4.18 per ton because it required two tons of defendant's cake to improve the complexion of complainant's cake as much as one ton had done before.

There is no proof as to the comparative color of complainant's cake, whether or not it varied, and if so, how much. If the better class of cake varied, as complainant says it did, it is hardly likely that the inferior cake should not vary. If the best class of cake goes from prime to inferior, it is to be presumed the worst class will go from bad to worse sometimes. No inferiority is claimed in defendant's cake, except in the matter of color, and there is no proof as to whether or not complainant's dark cake offered the same shade of color to be overcome when it took one to one as when it required two to one. Complainant also says that the letter of May 4, 1920, was written before a number of cars were received, but there is no proof that these later cars were different from those received before May 4, 1920. In fact, Geiger, the chemist, says he has only a portion of the samples taken, but that they are representative of all that were taken. The proof shows that the price of cake and meal was declining during the year following these contracts. Taking all these things into consideration we think complainant cannot be heard to object to the basis of recovery fixed by the decree, and under all of the facts and circumstances of the case we do not see any more satisfactory way in which to work out the rights of the parties.

The complainant further insists that it was error to refuse interest from the breach and to allow same from the filing of the bill only. On a claim of this character it is within the discretion of the court to allow interest or not. The suit was brought June 5, 1923, and the Chancellor allowed interest from the filing of the bill. Complainant has no reason to ask this court to change the decree in this respect. All assignments of error of both complainant and defendant are overruled and the decree of the lower court is affirmed. Decree will go here in favor of complainant against defendant and surety on appeal bond for the amount of the decree below with interest and costs of appeal.

Owen and Senter, JJ., concur.