**BISMARCK REALTY COMPANY,**
Plaintiff and Appellee,

v.

**Gaylord FOLDEN, Pioneer Realty &
Land Company, and Kenneth Austin,
Defendants and Appellants.**

**Civ. No. 10442.**

Supreme Court of North Dakota.

June 28, 1984.

638

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellee; argued by David L. Peterson, Bismarck.

Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for defendants and appellants; argued by Timothy J. Austin and Thomas F. Kelsch, Mandan.

On Petition for Rehearing

PEDERSON, Justice.

This case involves an action brought by a realty company (Bismarck Realty Company): (1) against a property owner (Gaylord Folden) for the breach of an "exclusive" listing agreement; and (2) against a competing realty company (Pioneer Realty & Land Company) and its agent (Kenneth Austin) for tortious interference with the "exclusive" listing agreement. The trial court determined that Folden had breached his contract with Bismarck Realty and entered judgment against him for $50,110.94, plus interest. The trial court found that Pioneer Realty had tortiously interfered with the contract and awarded Bismarck Realty $10,417.18 in punitive damages and costs. The trial court dismissed all claims against Austin. We dismiss Austin's appeal; affirm, but remand for modification, the judgment against Folden; and affirm in part and reverse in part the judgment against Pioneer Realty.

On a preprinted form labeled "Exclusive Listing Agreement" and bearing the Bismarck Realty Company logo and the statement "This form approved by N.D. Real Estate Commission and N.D. State Board of Realtors", Folden and Bismarck Realty agreed that for a six-month period from August 9, 1980, to February 9, 1981, Bismarck Realty would have the "exclusive right to sell or exchange" five eight-unit apartment buildings owned by Folden in Bismarck. As a "Special Condition" of the contract, Folden was given an option to withdraw the listing after three months "if reasonable promotion and activity" had not taken place. The contract also contains the following provision:

"2. I (we) hereby agree to pay you or any other broker working in cooperation with you, in cash for your services a commission of [7%, less $1,000 per building] of the total selling price, in the event you shall find a buyer, ready and willing to purchase exchange, option, or lease, with an option to purchase where said option is exercised, said property for the price and terms stated, or such terms as I may accept, during the period of this agreement or within six months after the termination of the agreement or any renewal thereof should a sale be completed to any person or to anyone acting for said person, with whom the broker or any of his agents personally exhibited by showing said property prior to the expiration of this contract, and in either case whose name the broker has submitted to the seller in writing not later than twenty-four (24) hours after the expiration on [sic] this contract."

Following execution of the contract, Bismarck Realty began marketing the property. Bismarck Realty prepared prospecti on the property, advertised the property, and showed the property to several potential buyers. During November, Doug Moore, an agent of Bergquist-Walker Real Estate,

with the knowledge and consent of Bismarck Realty, showed the property to Cornelius and Anna Heppner. Moore, who had handled several prior real estate transactions with the Heppners, also provided them with copies of the Bismarck Realty prospecti. Folden contacted Bismarck Realty on several occasions to inquire about the property and was informed of prospective purchasers.

On December 16, 1980, Folden visited with Austin, a real estate broker and part owner of Pioneer Realty. Folden and Austin had engaged in numerous real estate transactions together in the past and they were close friends. Folden, who at one time had been a real estate agent in Minot and was an experienced and knowledgeable real estate owner, had purchased the apartment complex through Austin several years earlier. Folden allegedly told Austin that he had "withdrawn" the listing with Bismarck Realty. Austin offered to attempt to sell the property at only a six-percent commission.

The Heppners contacted Austin later the same day. When Austin showed the apartment complex to the Heppners, they informed him that another broker or salesman had previously shown them the complex. Anna Heppner and Austin later signed an earnest money agreement to purchase the property. Austin made no effort to contact Bismarck Realty to verify Folden's claimed withdrawal from the contract or to inquire as to any prospective purchasers.

On December 19, 1980, the Heppners contacted Bismarck Realty. Bismarck Realty showed the Heppners the same apartment complex again and the Heppners stated that they had already made an offer through Austin. Bismarck Realty did not contact Austin or Folden at that time, but waited to see if the financing by the Heppners on their offer was successful. Several days later Bismarck Realty discovered that the sale was to be completed. The Heppners purchased three of the apartment buildings for $604,500. Bismarck Realty contacted Austin, who refus-

ed to pay or split the commission with Bismarck Realty. This lawsuit followed. The defendants chose not to file cross-claims.

On December 15, 1983, we filed an opinion in this case, in effect holding that certain letters of understanding regularly exchanged among Bismarck area realty companies offering to split the commission fees automatically became part of the contract between Folden and Bismarck Realty and, therefore, the sale of the property by Pioneer Realty did not breach that exclusive contract. We also held that the failure of Pioneer Realty to split the commission with Bismarck Realty was a breach of contract.

In that opinion we failed to heed our warning in *Center State Bank, Inc. v. State Banking Board,* 276 N.W.2d 132, 134 (N.D.1979):

"It has been said that when an appellate court proceeds on a theory which was not advanced by the parties there is no fair opportunity for the litigants to meet the issues, and there is an increased chance that the appellate court will commit error."

Two petitions for rehearing, one from Bismarck Realty and one from Pioneer Realty, and separate responses from both and from Folden, tell us that we erred. We agree and accordingly hereby withdraw the opinion filed December 15, 1983, and declare it void, and issue this opinion in lieu thereof.

Before reaching the contentions of the parties, we note that although the trial court dismissed all claims against Austin, his name appears in the Notice of Appeal. None of the parties have objected to Austin's dismissal from the action, and we therefore dismiss his appeal.

## BREACH OF CONTRACT

■ Folden asserts that the trial court erred in determining that the requirements of the statute of frauds, § 9–06–04(4), NDCC, did not apply to the listing agreement in this case. In *Kruger v. Soreide,* 246 N.W.2d 764, 770 (N.D.1976), we stated

that "[a] listing contract or an authorization to sell agreement is basically an employment contract or a creation of an agency relationship." The listing agreement in this case is not a contract for the sale of real property within the meaning of § 9–06–04(4), NDCC.

Folden also contends that the trial court's finding that Folden had not withdrawn from his contract with Bismarck Realty prior to the sale of property is clearly erroneous. Evidence was introduced which supports Folden's claim that he asked that the listing be withdrawn. Contradictory evidence was also introduced. A trial court is not bound to accept as the truth the testimony of any particular witness, and where the trial court chooses between two permissible views of the evidence, its decision on the matter is not clearly erroneous. *Leno v. Ehli,* 339 N.W.2d 92 (N.D.1983).

Folden asserts that the trial court erred in determining that the listing agreement is ambiguous. The determination of whether or not a contract is ambiguous is a question of law for the court to decide. *Schulz v. Hauck,* 312 N.W.2d 360 (N.D. 1981). An ambiguity exists in a contract when rational arguments can be made in support of contrary positions as to the meaning of the language in question. *Johnson v. Mineral Estate, Inc.,* 343 N.W.2d 778 (N.D.1984); *Mueller v. Stangeland,* 340 N.W.2d 450 (N.D.1983).

Folden contends that the contract unambiguously provides for a commission only upon delivery by the broker of "a buyer, ready and willing to purchase." Folden claims that because the sale was made through Austin and Pioneer Realty, Bismarck Realty did not satisfy the terms of the contract and therefore Bismarck Realty is not entitled to any commission.

We agree with the trial court that the listing agreement is ambiguous as to the intention of the parties and that to construe the contract it was proper, under cases such as *Stuart v. Secrest,* 170 N.W.2d 878 (N.D.1969), and § 9–07–12, NDCC, to refer to the circumstances under which it was made. Folden's contention that the terms of the agreement unambiguously establish that Bismarck Realty was entitled to a commission only if it personally presented Folden with a buyer for the property ignores other provisions in the contract which relate to the "exclusive right to sell or exchange" the property for a six-month period. Folden's interpretation would render this language meaningless. *See Starks v. Springgate,* 39 N.D. 228, 167 N.W. 221 (1918). A contract must be read in its entirety. *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897 (N.D. 1982). Because rational contrary arguments can be made as to the meaning of the language in the contract, the trial court did not err in concluding that the contract was ambiguous and in considering extrinsic evidence as to the intention of the parties. *Accord Dahl v. Griffin,* 652 P.2d 84 (Alaska 1982).

Folden asserts that the trial court erred in determining that the listing agreement constituted an "exclusive right to sell" contract. If a contract is determined to be ambiguous and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact. *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D.1975).

The trial court found that in order to avoid indiscriminate showing of the apartment complex and disclosure of his personal financial data, Folden did not want the property listed in the Multiple Listing Service, but wanted only Bismarck Realty to handle the sale of the property. The parties had agreed that other brokers could participate in negotiating a sale of the property, but only if they were working in cooperation with Bismarck Realty. Bismarck Realty was intended to have complete supervision over the sale of the property. These findings by the trial court are supported by the record and are not clearly erroneous. Rule 52(a), NDRCivP.

Generally, an "exclusive right to sell" agreement forbids the owner from

selling his property by himself or through another broker while the property is listed with the original broker. *Black's Law Dictionary* 507 (5th ed. 1979) [citing *Foltz v. Begnoche*, 222 Kan. 383, 565 P.2d 592 (1977)]. We conclude that the trial court did not err in characterizing the parties' agreement as a form of an exclusive right to sell contract.

Folden asserts that the listing agreement is a unilateral, unenforceable contract under this Court's decision in *Kruger v. Soreide*, 246 N.W.2d 764 (N.D.1976), and in the alternative, that the trial court erred in awarding Bismarck Realty the commission stipulated in its contract with Folden rather than damages based on Bismarck Realty's "out-of-pocket" costs in attempting to market the property.

In *Kruger*, this Court, in an attempt to avoid the inequitable results which would arise through the use of strict interpretations of listing contracts either in favor of an owner or in favor of a real estate broker, adopted an intermediate view to govern interpretations of exclusive right to sell listing agreements. After an extensive discussion of the case law in this jurisdiction, we stated:

"This type of provision ... has not been interpreted to entitle the broker to a commission under all circumstances. Rather, there must be some proof of consideration for the contract by performance of services by the real estate agent. The broker must show substantial performance of the duties imposed on him by the contract, even if he does not produce a buyer to be eligible for a commission.... *To recover a commission even under an exclusive right-to-sell provision, clear evidence of expenditure of time, effort, or money by the broker must be presented.* Where such a showing is absent the listing agreement has the characteristics of a unilateral contract, which is not binding for lack of sufficient consideration." *Kruger, supra,* 246 N.W.2d at 773. [Emphasis added.]

Thus, where a broker is given an exclusive right to sell contract for a specified time, and the owner effectuates a sale of the property through another broker during that time, the original broker, if he has substantially performed the contract through the expenditure of time, effort, or money in marketing the property, is entitled to damages based on the commission stipulated in the contract. *Cf. Bergquist-Walker Real Est. v. Wm. Clairmont,* 333 N.W.2d 414 (N.D.1983). Whether or not, in a given situation, there has been substantial performance of a contract is a question of fact. *Dittmer v. Nokleberg,* 219 N.W.2d 201 (N.D.1974).

In this case, the trial court found that Bismarck Realty prepared prospecti on the property, conducted "extensive" advertising in the newspaper, and showed the property to several prospective buyers, one of whom almost purchased the property by attempting to obtain financing. Bismarck Realty produced evidence that it showed, in cooperation with another broker and through its own agents, the property to the ultimate purchasers, the Heppners, on two occasions during the six-month period of the contract before the sale through Pioneer Realty was consummated. Under the particular facts of this case, we cannot say that the trial court erred in determining that Bismarck Realty had substantially performed the contract, or that the proper measure of damages for the wrongful breach of that contract was the stipulated commission as applied to the purchase price subsequently obtained from the Heppners by Pioneer Realty.

## PREJUDGMENT INTEREST

Folden asserts that the trial court erred in awarding prejudgment interest at the rate of twelve percent per annum. He contends that the interest should have been computed at the statutory rate of six percent per annum from the date of the breach until the date of the judgment, pursuant to § 47–14–05, NDCC, and at the statutory rate for judgments of twelve percent thereafter, pursuant to § 28–20–34, NDCC. We agree.

In *Hirschkorn v. Severson*, 319 N.W.2d 475 (N.D.1982), we held that in the absence of a specific contractual rate of interest, prejudgment interest must be calculated at the legal rate of six percent prescribed in § 47–14–05, NDCC. Bismarck Realty, however, contends that we erred in *Hirschkorn* by not considering § 28–20–34, NDCC. By its very terms, § 28–20–34, NDCC, applies to the legal rate of interest on judgments, and not the legal rate of prejudgment interest. We therefore remand for recomputation of the interest allowable to Bismarck Realty from Folden.

## TORTIOUS INTERFERENCE

Pioneer Realty contends that the trial court erred in concluding that Austin, as its agent, tortiously interfered with the listing contract between Folden and Bismarck Realty. This Court has previously recognized the existence of such a tort in this jurisdiction. *See Blair v. Boulger*, 336 N.W.2d 337 (N.D.), *cert. denied*, —— U.S. ——, 104 S.Ct. 491, 78 L.Ed.2d 685 (1983); *Fox v. Higgins*, 149 N.W.2d 369 (N.D.), *cert. denied*, 389 U.S. 873, 88 S.Ct. 160, 19 L.Ed.2d 153 (1967); *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 293 N.W. 200 (1940). In order to establish a prima facie case of tortious interference with contractual relations, the plaintiff must show that: (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification. *Derosia v. Austin*, 115 Mich.App. 647, 321 N.W.2d 760 (1982). *See generally* Annot., 34 A.L.R.3d 720 (1970). Where interference with contractual rights is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense, it is unjustifiable. *Blair, supra.*

In its findings of fact, conclusions of law, and order for judgment, the trial court stated:

"A contract existed between Bismarck Realty and Folden. This contract was enforceable as an exclusive right-to-sell contract. Mr. Austin was an employee of Pioneer Realty, a corporation. Bismarck Realty knew, through its agents and employees, that Austin was an employee of Pioneer Realty. Austin knew of the existence of the contract between Bismarck Realty and Folden which provided a commission of seven percent. Austin offered to Mr. Folden to sell the same property at a commission of six percent. Austin knew of the efforts of Bismarck Realty to market the property and knew that Bismarck Realty had been in contact with prospective purchasers. Austin made no effort to contact Bismarck Realty to verify the claimed withdrawal of the contract by Folden, nor did he make inquiry as to any prospective purchasers, nor did he make inquiry as to whether Bismarck Realty had reserved any prospective purchasers if the contract was in fact withdrawn. Austin knew at the time he was with Mr. and Mrs. Heppner looking at the property that another broker or salesman had previously shown the property to the Heppners. Austin was familiar with the reserve provision in listing agreements. Austin's actions in selling the property in spite of his knowledge of Bismarck Realty's contract was willful and intentional and his purpose was to gain a financial advantage over Bismarck Realty and to exclude Bismarck Realty or any other broker from being paid a commission. Folden breached his contract with Bismarck Realty by paying a six percent commission to Pioneer Realty. Austin was the cause of the breach by Folden of his contract with Bismarck Realty."

We have reviewed the entire record and are not left with a definite and firm conviction that the trial court made a mistake in its findings concerning Austin's conduct in this matter. The trial court did not err in concluding that Pioneer Realty, through Austin, tortiously interfered with the contractual relationship between Folden and Bismarck Realty.

## PUNITIVE DAMAGES

The trial court awarded Bismarck Realty, in addition to costs, punitive dam-

ages from Pioneer Realty in the amount of $10,000. No actual compensatory damages were awarded. The award of punitive damages in this instance must be reversed.

The trial court found that the conduct of Austin, acting as an agent of Pioneer Realty, was "intentional and willful and without justification," apparently relying on *Dassance v. Nienhuis*, 57 Mich.App. 422, 225 N.W.2d 789 (1975), in concluding that punitive damages were therefore appropriate. In *Dassance, supra*, 57 Mich.App. at 434, 225 N.W.2d at 796, the court upheld a punitive damages award where the trial court found that a defendant had "willfully and intentionally interfered with plaintiffs' contract." The court noted, however, that the Michigan Supreme Court had recently held that "willful" conduct would support an award of punitive damages. *Dassance, supra* [citing *Alexander v. City of Detroit*, 392 Mich. 30, 219 N.W.2d 41 (1974)]. The prerequisite to an award of punitive damages in this jurisdiction differs.

Section 32–03–07, NDCC, provides:

"*32–03–07. When court or jury may give exemplary damages.* In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of *oppression, fraud, or malice, actual or presumed*, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant." [Emphasis added.]

 There must be a specific finding of oppression, fraud, or malice, actual or presumed, by the trier of fact to support an award of exemplary damages. *Dahlen v. Landis*, 314 N.W.2d 63 (N.D.1981); *John Deere Company v. Nygard Equipment, Inc.*, 225 N.W.2d 80 (N.D.1974). Intentional or willful conduct is not synonymous with oppressive, fraudulent or malicious conduct. *Cf. Corwin Chrysler-Plymouth v. Westchester Fire*, 279 N.W.2d 638, 645 (N.D.1979) ["[A] finding of bad faith alone does not entitle the insured to punitive damages; oppression, fraud, or malice, actual or implied, must also be found."] The absence of a finding of oppression, fraud,

or malice in this case is fatal to the award of punitive damages. The award of costs is affirmed.

In accordance with this opinion: the inadvertent appeal of Austin is dismissed; the judgment against Folden is affirmed, but remanded for modification of prejudgment interest; and the judgment against Pioneer Realty is reversed as to punitive damages but otherwise affirmed. Costs on appeal are not allowed.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.