IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 20, 2004 Session

**PRIME COMPANY AND JERRY SALEMI**
**v.**
**WILKINSON & SNOWDEN, INC., AND EUGENE WOODS**

An Appeal from the Chancery Court for Shelby County
No. 99-0047-2   Arnold B. Goldin, Chancellor

———————————

**No. W2003-00696-COA-R3-CV - Filed September 30, 2004**

———————————

This case involves a claim for procurement of breach of contract.  The plaintiff real estate firm sued the defendant real estate firm for procurement of breach of a real estate listing contract.  A bench trial was conducted.  At the close of the plaintiffs' proof, the defendants moved to dismiss the plaintiffs' claims.  The trial court noted that, in order to prove procurement of breach of contract, the plaintiffs were required to prove that the defendants acted with "malice."  In order to prove "malice," the trial court held that the plaintiffs were required to prove that the defendants were "motivated by ill will, hatred or spite."  The trial court found that the plaintiffs had not submitted evidence that the defendants were motivated by ill will, hatred or spite, and therefore held that the plaintiffs could not prove that element of their claim.  The plaintiffs' claim for procurement of breach was dismissed. The plaintiffs now appeal.  We reverse, finding that in order to prove malice in this context, the plaintiffs were not required to prove ill will, hatred or spite.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Edward M. Bearman, Memphis, Tennessee, for the appellants, Prime Company and Jerry Salemi.

Dawn Davis Carson, Memphis, Tennessee, for the appellees, Wilkinson & Snowden and Eugene Woods.

**OPINION**

Three sisters, Marcia DeVore, Tina Gregory, and Louise Wright (collectively, "Sellers") inherited from their mother a 68-acre piece of valuable real property in Shelby County, Tennessee. On July 26, 1994, the Sellers entered into a Listing Agreement ("Agreement") with

Plaintiff/Appellant Jerry Salemi ("Salemi"), d/b/a Prime Company real estate company, giving Salemi the exclusive right to sell the property. As is typical with such agreements, the Agreement in this case provided for a one-year (or 365-day) protective period from the date of termination of the contract by either party. Under that provision, if the property was sold during the protective period to someone to whom Salemi had identified the property while he was under contract, then Salemi would be entitled to a full commission of 7%.

On June 4, 1995, the Sellers wrote Salemi a letter terminating the Agreement. The termination was to be effective thirty days from the date of the letter. After the letter was written terminating the contract, the Sellers asked Salemi for a list of all the parties he had contacted regarding the property. Salemi considered this request to be onerous, and consequently refused to comply. He instead told the Sellers that, when they sold the property, they should call him and if he believed that he was entitled to a commission, he would provide proof of his contact with the buyers. The Sellers were dissatisfied with Salemi's response, and told him that they considered the whole deal closed.

In November 1995, Defendant/Appellee Eugene Woods ("Woods"), a partner in Defendant/Appellee Wilkinson & Snowden real estate agency, approached the Sellers with a proposed transaction that ultimately resulted in the sale of the property. On March 20, 1996, during the protective period under Salemi's listing contract, the Sellers sold the property for $1,360,000 to Corporate Estates, whose principal is Jack Vanvalkenberg ("Vanvalkenberg"). The Sellers did not inform Salemi of the sale.

Prior to the sale, the Sellers became uncertain about their obligation to Salemi under the Agreement. Therefore, they asked Woods whether Salemi was entitled to any commission. On March 6, 1996, Woods wrote the Sellers a letter telling them that they were under no such obligation to Salemi. In accordance with Woods' recommendation, the Sellers did not pay Salemi a commission on the sale of the property. Instead, Wilkinson & Snowden received the full commission. Salemi learned of the sale by seeing the transaction in a local newspaper. Through further investigation, he discovered Wilkinson & Snowden's role in the sale.

On January 21, 1999, Salemi, d/b/a Prime Company, filed a lawsuit against the Sellers, alleging that they breached the Agreement by failing to pay him a full commission on the sale of the property. Salemi also named as defendants Wilkinson & Snowden and Woods (collectively, "Wilkinson & Snowden"), alleging that Wilkinson & Snowden negligently or willfully procured the Sellers' breach of the Agreement. The trial was scheduled for January 15 and 16, 2003.

Prior to the trial, the trial court addressed the issue of malice, noting that "malice" is an essential element in a claim for procurement of breach of contract. Salemi argued that the term "malice" should be defined as the "intentional commission of a harmful act without legal cause," consistent with the definition of malice used in *In re AM Int'l, Inc. (AM Int'l, Inc. v. TVA)*, 46 B.R. 566 (1985), which involved a procurement of breach of contract claim. The trial court rejected Salemi's proposed definition, and determined instead that it would define "malice" as that term is

defined in the Tennessee Pattern Jury Instructions ("T.P.I.") for punitive damages, which is "motivated by ill will, hatred or spite." T.P.I. 14.15. The trial court then commenced with the trial.

At the close of Salemi's proof, Wilkinson & Snowden moved for dismissal of Salemi's claim of procurement of beach. The trial court determined that Wilkinson & Snowden was aware of Salemi's past representation of the Sellers, and that Wilkinson & Snowden did nothing to investigate the terms of the Agreement before in effect advising the Sellers to breach the Agreement by not paying Salemi the commission. The trial court observed that Wilkinson & Snowden should have looked into the terms of the Agreement before so advising the Sellers. The trial court held, however, "[t]his may have been bad business, this may have been negligence, but I don't think it is malice." Thus, after determining that Salemi had not submitted evidence that Wilkinson & Snowden's conduct rose to the level of "malice," the trial court entered judgment in favor of Wilkinson & Snowden.

The trial proceeded against the Sellers. At the conclusion of the trial, the trial court held in favor of Salemi on the breach of contract claim against the Sellers and awarded him $47,600 in commission plus interest.[1] On February 11, 2003, the trial court entered an order consistent with its oral ruling. Salemi appealed the judgment as to both the Sellers and Wilkinson & Snowden. While on appeal, Salemi's claim against the Sellers was settled. Therefore, this appeal continues only as to the procurement of breach claim against Wilkinson & Snowden.

On appeal, Salemi argues that the trial court erred in dismissing his claim for procurement of breach of contract against Wilkinson & Snowden, because the trial court employed the wrong definition of "malice" in reaching its conclusion. Whether the trial court applied the correct legal standard in making its decision is a question of law, which we review *de novo*, with no presumption of correctness. ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001).

To establish a claim for procurement of breach of contract, a plaintiff must prove seven elements: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted with malice; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of contract; and (7) there must have been damages resulting from the breach of the contract. ***Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.***, 13 S.W.3d 343, 354-55 (Tenn. Ct. App. 1999); *see* Tenn. Code Ann. § 47-50-109 (2003). The pivotal element in this appeal is the fourth one, the requirement that the plaintiff prove "malice." As noted above, the trial court below dismissed Salemi's claim of procurement of breach against Wilkinson & Snowden because he did not prove that Wilkinson & Snowden's conduct was "motivated by ill will, hatred or spite." The crux of Salemi's argument on appeal is his assertion that the trial court erred in using that definition.

---

[1] The trial court determined that Salemi would have shared the commission with Wilkinson & Snowden, and it therefore awarded Salemi only half of the contracted commission.

A factually similar situation is presented in ***Crye-Leike Realtors, Inc. v. WDM, Inc.***, No. 02A01-9711-CH-00287, 1998 WL 651623 (Tenn. Ct. App. Sept. 24, 1998).[2] In ***Crye-Leike***, Crye-Leike's real estate agent, Coleman Borowsky ("Borowsky"), signed an exclusive contract on behalf of Crye-Leike to represent the defendant, WDM, Inc., to locate property to lease for WDM's business. The contract included a two-year protective period, stating that if WDM entered into any lease or purchase agreement within two years after the period of the agreement, WDM would recognize Borowsky as the broker in the transaction. ***Crye-Leike***, 1998 WL 651623, at *1. During the contract period, Borowsky became suspicious that WDM was privately dealing with Trammell Crow SE, Inc. ("Trammell Crow"), which Borowsky had previously contacted about leasing suitable space for WDM. Consequently, Borowsky called his contact at Trammell Crow, Brad Kornagey ("Kornagey"), and reminded Kornagey that Borowsky had an exclusive agreement with WDM. ***Id.*** at *2. As it turned out, Borowsky's suspicions were correct. On February 22, 1994, unbeknownst to Borowsky, WDM executed a lease agreement for space being offered through Trammell Crow. WDM had informed Trammell Crow's leasing agent, Scott Pahlow ("Pahlow"), that WDM was represented by Borowsky. Pahlow advised WDM that Borowsky did not need to be involved, because Borowsky had neither shown WDM the property, nor had he contacted Pahlow about the property. On February 23, 1994, WDM terminated its agreement with Borowsky. ***Id.*** Borowsky, of course, was not compensated as the broker for WDM's lease of the Trammel Crow property.

Crye-Leike sued WDM and its principal for breach of contract. It later amended its complaint to add claims of procurement of breach of contract against Pahlow and Trammell Crow. All of the defendants filed motions for summary judgment, which were granted by the trial court. Crye-Leike appealed. ***Id.***

On appeal, the ***Crye-Leike*** court addressed the trial court's dismissal of Crye-Leike's claim of procurement of breach of contract against Pahlow and Trammel Crow. The appellate court held that, in the context of a claim for procurement of breach of a contract, "malice is 'the wilful violation of a known right.' " ***Id.*** at *6 (quoting ***Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.***, 1986 WL 622, at *6 (Tenn. Ct. App. Jan. 2, 1986) (quoting 45 Am. Jur. 2d *Interference* § 3), ***modified on other grounds***, 734 S.W.2d 322 (Tenn. 1947)). The ***Crye-Leike*** court explained that the "ill will" definition of malice for punitive damages doe not apply to procurement of breach:

> Contrary to Trammell Crow's argument, Crye-Leike was not required to show that Pahlow felt ill will toward Borowsky and Crye-Leike. It was sufficient if the evidence showed that Pahlow's conduct was intentional and without legal justification. . . . Interference is without justification if it "is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense." ***Bismarck Realty Co. v. Folden***, 354 N.W.2d 636, 642 (N.D. 1984) (emphasis added).

---

[2]On the Court's request, the parties submitted supplemental briefs on the application of ***Crye-Leike*** to this case.

*Id.* The appellate court then concluded that the facts were sufficient to establish the element of malice under that definition. Pahlow knew of WDM's contract with Crye-Leike, but did not inquire into the extent and the nature of the relationship. Rather, he proceeded to conclude the lease transaction, without regard for Borowsky or Crye-Leike. In doing so, Pahlow benefitted himself and Trammell Crow at the expense of Borowsky and Crye-Leike. Thus, Crye-Leike's evidence of malice, or the "wilful violation of a known right," was sufficient to defeat the motion for summary judgment filed by Pahlow and Trammel Crow. *Id.*

Clearly the definition of malice utilized in *Crye-Leike* is applicable in this case, and Salemi was not required to submit evidence that Wilkinson & Snowden's conduct was motivated by "hatred, ill will or spite" in order to establish the element of malice. Consequently, we must conclude that the trial court erred in applying the punitive damage definition of "malice" to Salemi's procurement claim against Wilkinson & Snowden. Therefore, we reverse the trial court's dismissal of Salemi's claim against Wilkinson & Snowden, and remand for further proceedings.

The decision of the trial court is reversed, and the case is remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellees Wilkinson & Snowden and Eugene Woods, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE