[No. 30005. Department Two. October 25, 1946.]

E. L. OLWELL, *Respondent*, v. NYE & NISSEN COMPANY, *Appellant*.[1]

[1] Reported in 173 P. (2d) 652.

*Lester Seinfeld* and *Peterson & Duncan,* for appellant.

*Lee Olwell,* for respondent.

MALLERY, J.—On May 6, 1940, plaintiff, E. L. Olwell, sold and transferred to the defendant corporation his one-half interest in Puget Sound Egg Packers, a Washington corporation having its principal place of business in Tacoma. By the terms of the agreement, the plaintiff was to retain full ownership in an "Eggsact" egg-washing machine, formerly used by Puget Sound Egg Packers. The defendant promised to make it available for delivery to the plaintiff on or before June 15, 1940.

It appears that the plaintiff arranged for and had the machine stored in a space adjacent to the premises occupied by the defendant but not covered by its lease. Due to the scarcity of labor immediately after the outbreak of the war, defendant's treasurer, without the knowledge or consent of the plaintiff, ordered the egg washer taken out of storage. The machine was put into operation by defendant on May 31, 1941, and thereafter, for a period of three years,

was used approximately one day a week in the regular course of the defendant's business.

Plaintiff first discovered this use in January or February of 1945, when he happened to be at the plant on business and heard the machine operating. Thereupon, plaintiff offered to sell the machine to defendant for six hundred dollars or half of its original cost in 1929. A counteroffer of fifty dollars was refused, and, approximately one month later, this action was commenced to recover the reasonable value of defendant's use of the machine, and praying for twenty-five dollars per month from the commencement of the unauthorized use until the time of trial. A second cause of action was alleged, but was not pressed and hence is not here involved. The court entered judgment for plaintiff in the amount of ten dollars per week for the period of 156 weeks covered by the statute of limitations, or $1,560, and gave the plaintiff his costs.

Defendant has appealed to this court, assigning error upon the judgment, upon the trial of the cause on the theory of unjust enrichment, upon the amount of damages, and upon the court's refusal to make a finding as to the value ·of the machine, and in refusing to consider such value in measuring damages.

The theory of the respondent was that the tort of conversion could be "waived" and suit brought in quasi contract, upon a contract implied in law, to recover, as restitution, the profits which inured to appellant as a result of its wrongful use of the machine. With this the trial court agreed and, in its findings of facts, found that the use of the machine

" . . . resulted in a benefit to the users, in that said use saves the users appromixately $1.43 per hour of use as against the expense which would be incurred were eggs to be washed by hand; that said machine was used by Puget Sound Egg Packers and defendant, on an average of one day per week from May of 1941, until February of 1945 at an average saving of $10.00 per each day of use."

In substance, the argument presented by the assignments of error is that the principle of unjust enrichment, or quasi

contract, is not of universal application but is imposed only in exceptional cases because of special facts and circumstances and in favor of particular persons; that respondent had an adequate remedy in an action at law for replevin or claim and delivery; that any damages awarded to the plaintiff should be based upon the use or rental value of the machine and should bear some reasonable relation to its market value. Appellant therefore contends that the amount of the judgment is excessive.

█ It is uniformly held that in cases where the defendant *tort feasor* has benefited by his wrong, the plaintiff may elect to "waive the tort" and bring an action *in assumpsit* for restitution. Such an action arises out of a duty imposed by law devolving upon the defendant to repay an unjust and unmerited enrichment. Woodward, The Law of Quasi-Contracts 439, § 272 (2); Keener on Quasi-Contracts 160. See, also, Professor Corbin's articles, "Waiver of Tort and Suit in Assumpsit," 19 Yale Law Journal 221, and "Quasi-Contractual Obligations," 21 Yale Law Journal 533.

█ It is clear that the saving in labor cost which appellant derived from its use of respondent's machine constituted a benefit.

According to the Restatement of Restitution 12, § 1 (b),

"A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. *He confers a benefit not only where he adds to the property of another, but also where he* saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage." (Italics ours.)

██ It is also necessary to show that, while appellant benefited from its use of the egg-washing machine, respondent thereby incurred a loss. It is argued by appellant that, since the machine was put into storage by respondent, who had no present use for it, and for a period of almost three years did not know that appellant was operating it, and since it was not injured by its operation and the appellant

never adversely claimed any title to it, nor contested respondent's right of repossession upon the latter's discovery of the wrongful operation, that the respondent was not damaged, because he is as well off as if the machine had not been used by appellant.

The very essence of the nature of property is the right to its exclusive use. Without it, no beneficial right remains. However plausible, the appellant cannot be heard to say that its wrongful invasion of the respondent's property right to exclusive use is not a loss compensable in law. To hold otherwise would be subversive of all property rights, since its use was admittedly wrongful and without claim of right. The theory of unjust enrichment is applicable in such a case.

■ We agree with appellant that respondent could have elected a "common garden variety of action," as he calls it, for the recovery of damages. It is also true that, except where provided for by statute, punitive damages are not allowed, the basic measure for the recovery of damages in this state being compensation. If, then, respondent had been *limited* to redress *in tort* for damages, as appellant contends, the court below would be in error in refusing to make a finding as to the value of the machine. In such case, the award of damages must bear a reasonable relation to the value of the property. *Hoff v. Lester,* 25 Wn. (2d) 86, 168 P. (2d) 409.

■ But respondent here had an election. He chose rather to waive his right of action *in tort* and to sue *in assumpsit* on the implied contract. Having so elected, he is entitled to the measure of restoration which accompanies the remedy.

"Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled, or if this is not done, causing the defendant to pay the plaintiff an amount which will restore the plaintiff to the position in which he was before the defendant received the benefit. If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions of restitution are not punitive. In

fact, however, the plaintiff frequently has lost more than the defendant has gained, and sometimes the defendant has gained more than the plaintiff has lost.

"In such cases the measure of restitution is determined with reference to the tortiousness of the defendant's conduct or the negligence or other fault of one or both of the parties in creating the situation giving rise to the right to restitution. If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited. *If he was consciously tortious in acquiring the benefit, he is also deprived of any profit derived from his subsequent dealing with it.* If he was no more at fault than the claimant, he is not required to pay for losses in excess of benefit received by him and he is permitted to retain gains which result from his dealing with the property." (Italics ours.) Restatement of Restitution 595-6.

Respondent may recover the profit derived by the appellant from the use of the machine.

■ Respondent has prayed "on his first cause of action for the sum of twenty-five dollars per month from the time defendant first commenced to use said machine subsequent to May 1940 (1941) until present time."

In computing judgment, the court below computed recovery on the basis of ten dollars per week. This makes the judgment excessive, since it cannot exceed the amount prayed for.

In *Bank of British Columbia v. Port Townsend,* 16 Wash. 450, 47 Pac. 247, a definite amount was prayed, but the complaint did not state in express words that the plaintiff was damaged. In holding such an allegation to be unnecessary, we stated:

"It is said by Sutherland, in his work on Damages, § 415, that:

" 'The controlling part of the complaint, as to the amount of damages, is the prayer for judgment.'

"And in Sedgwick on Damages (8th ed.), § 1260, it is said:

" ' . . . except as fixing a limit beyond which recovery cannot be had, the averment of the amount of damages is not a material one.' "

"In regard to the amount of damages to be averred, it is only necessary to lay them so high as to cover the injury:

for no recovery can be had beyond the amount in the declaration." 4 Sedgwick on Damages (9th ed.) 2590, § 1258.

And in *Belle City Mfg. Co. v. Kemp,* 27 Wash. 111, 67 Pac. 580, where the prayer was for $895, the verdict and judgment were for $900.35. We there instructed the court below that the amount in excess of $895 must be remitted since the evidence was sufficient to support the judgment prayed.

We therefore direct the trial court to reduce the judgment, based upon the prayer of the complaint, to twenty-five dollars per month for thirty-six months, or nine hundred dollars.

The judgment as modified is affirmed. Appellant will recover its costs.

MILLARD, C. J., STEINERT, SIMPSON, and CONNELLY, JJ., concur.

January 6, 1947. Petition for rehearing denied.