[Nos. 6907–9–III; 7205–3–III.   Division Three.   July 22, 1986.]

THE TRANE COMPANY, *Appellant,* v. RANDOLPH
PLUMBING & HEATING, ET AL,
*Respondents.*

*Nathan A. Kirk* and *Reinig, Kirk & Heidlebaugh,* for appellant.

*Mike R. Johnston* and *Campbell, Johnston & Roach,* for respondents.

THOMPSON, J.—The Trane Co. appeals the dismissal of its claims against Randolph Plumbing & Heating, Inc., for unjust enrichment and conversion. We reverse solely on the issue of unjust enrichment.

Randolph, a general contractor, hired Griggs Heating and Electric Contractors, Inc., as a subcontractor for a project on the Hanford Reservation, and Transamerica Insurance Co. issued a payment and performance bond running from Griggs to Randolph. Six fans/blowers required for the work were ordered by Griggs from Trane for the agreed price of $13,448. Acting as Griggs' agent, Randolph's foreman accepted the fans when they were delivered; however, before the fans could be installed, Griggs became insolvent and left the work site.[1]

Because of Griggs' insolvency, Transamerica requested bids for the completion of Griggs' work. Randolph's bid included furnishing and installing the six fans. The bid was accepted, the work was completed, and Randolph was paid. Although Trane never received payment for the fans, they were incorporated into the work by Randolph.

On May 2, 1984, Trane obtained a default judgment against Griggs. Trane also entered into a "Stipulation" with Transamerica whereby Trane agreed not to execute on any judgment against Transamerica in exchange for an assignment of any claims Transamerica might have against Ran-

---

[1] We find no support in the record for Trane's claim that title to the fans did not pass to Griggs upon delivery.

dolph. Trane then commenced proceedings against Randolph alleging unjust enrichment. Following a bench trial on October 5, 1984, the court held Transamerica was liable to Trane for the value of the fans but the stipulation between the parties precluded Trane from asserting a claim against Transamerica. The court also noted Transamerica had failed to cross–claim against Randolph, and dismissed Trane's action with prejudice.

On December 17, 1984, Trane commenced another action against Randolph for conversion of the fans. The court concluded Trane was barred from bringing a second suit on the same claim; thus, Trane's complaint was dismissed with prejudice. Trane's appeals from both dismissals have been consolidated.

Although Trane's argument focuses on security agreements for after–acquired property under the Uniform Commercial Code, this case clearly involves principles of suretyship. Suretyship is defined as a contractual relationship in which one party engages to be answerable for the debt or default of another. The surety's obligation is collateral to the obligation contracted by the principal. J. Elder, *Stearns on Suretyship* § 1.1 (5th rev. ed. 1951). Suretyship may be evidenced by a contractor's bond. *See* Restatement of Security § 111, comment *a* (1941).

Since the construction project was at Hanford on federal property, the Miller Act, 40 U.S.C. § 270a (effective Nov. 2, 1978) applies. The Miller Act requires the contractor, in a project exceeding $25,000, to furnish a payment bond for the "protection of all persons supplying labor and material in the prosecution of the work . . ." 40 U.S.C. § 270a(a)(2). The Miller Act has generally been interpreted to cover materials supplied with the good faith intent that they were to be incorporated into the covered project. *M. Lasden, Inc. v. Decker Elec. Corp.*, 372 Mass. 179, 360 N.E.2d 1068, 1070 (1977). Washington follows the rule that material furnished by the materialman to a contractor or subcontractor to be used in the construction of a building satisfies the mechanics' lien statutes where the material has either been actually

used or has been delivered to the building site for use in such building. Annot., *Delivery of Material to Building Site as Sustaining Mechanic's Lien*, 39 A.L.R.2d 394, 410 (1955). Consequently, the fans, upon delivery to the building site, were covered by the performance bond issued by Transamerica. When Griggs defaulted, Transamerica became liable for the price of the fans to Trane. *See Clow Corp. v. Metro Pipeline Co.*, 442 F. Supp. 583 (N.D. Ga. 1977); *Continental Bronze Co. v. Salvo & Armstrong Steel Co.*, 8 Mass. App. Ct. 799, 397 N.E.2d 1143 (1979).

Here, however, Trane chose to release the surety on the performance bond and pursue direct recovery against Randolph under a theory of unjust enrichment or quasi contract. A plaintiff may elect to waive alternate actions and "sue *in assumpsit* on the implied contract". *See Olwell v. Nye & Nissen Co.*, 26 Wn.2d 282, 286, 173 P.2d 652, 169 A.L.R. 139 (1946).

■ Quasi contracts are not based on a contract between the parties or any contract agreement, but arise from an implied legal duty or obligation. *Family Med. Bldg., Inc. v. Department of Social & Health Servs.*, 104 Wn.2d 105, 112, 702 P.2d 459 (1985). Since recovery in quasi contract is based on the prevention of unjust enrichment, the doctrine is applied when money or property has been placed in one party's possession such that in equity and good conscience it should not be retained. *Family Med.*, at 112; *Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 499, 717 P.2d 1384 (1986).

Randolph claims to find quasi contract there must be a meeting of the minds. Thus, Trane's theory fails under the particular facts of this case, *i.e.*, Trane and Randolph had no contact prior to trial. We disagree.

[T]he law recognizes two classes of implied contracts: those implied in fact and those implied in law. *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wn.2d 363, 367, 301 P.2d 759 (1956). A contract implied in fact is an agreement of the parties arrived at from their conduct rather than their expressions of assent. Like an express

contract, "*it grows out of the intentions of the parties to the transaction, and there must be a meeting of the minds.*" *Milone & Tucci, Inc.,* at 368, quoting with approval, *Western Oil Ref. Co. v. Underwood,* 83 Ind. App. 488, 491, 149 N.E. 85 (1925). A contract implied in law, or "quasi contract", on the other hand, arises from an implied duty of the parties not based on a contract, or on any consent or agreement. *Milone & Tucci, Inc.,* at 367; *Bill v. Gattavara,* 34 Wn.2d 645, 650, 209 P.2d 457 (1949); 1 A. Corbin, *Contracts* 44 (1963).

*Heaton v. Imus,* 93 Wn.2d 249, 252, 608 P.2d 631 (1980); *Eaton v. Engelcke Mfg., Inc.,* 37 Wn. App. 677, 680, 681 P.2d 1312 (1984). The necessary elements of quasi contracts are (1) the enrichment of the defendant must be unjust, and (2) the plaintiff cannot be a mere volunteer. *Washington Case Law—1954,* 30 Wash. L. Rev. 83, 95–97 (1955). Here, the court found:

The six blowers were incorporated into the work by Randolph and have never been paid for.

Consequently, Randolph has been enriched at the expense of Trane. *Chandler v. Washington Toll Bridge Auth.,* 17 Wn.2d 591, 601–03, 137 P.2d 97 (1943). Additionally, Trane was not a volunteer, having delivered the equipment at Griggs' request. Furthermore, Randolph's employees were aware of the shipment's source through their acceptance of the fans on Griggs' behalf. Hence, we hold there are sufficient facts to support a conclusion that payment by Randolph to Trane is necessary to avoid injustice. *Town Concrete,* at 500. Thus, Trane's first cause of action should not have been dismissed.

Trane also attempted to recover from Randolph on alternative theories of garnishment and conversion. We hold Trane is precluded from recovery under either theory. The garnishment procedure is set forth in RCW 7.33.010–.390. *Zesbaugh, Inc. v. General Steel Fabricating, Inc.,* 95 Wn.2d 600, 601, 627 P.2d 1321 (1981). The garnishee defendant must be indebted to the principal debtor to support garnishment. *Sundberg v. Boeing Airplane Co.,* 52 Wn.2d 734, 737, 328 P.2d 692 (1958).

Here, the surety, Transamerica, was obligated to complete Griggs' contract with Randolph, that is to pay the cost of procuring its completion. *See Sundberg,* at 740 (Mallery, J., dissenting). Although the fans were delivered to the jobsite prior to Griggs' default, they were incorporated into the construction after Transamerica undertook the completion of the contract. Thus, there is a direct obligation on the part of Transamerica running to Trane, and Transamerica owes the cost of the fans to Trane as a principal as well as a surety. *See Sundberg,* at 740 (Mallery, J., dissenting).

In most jurisdictions, however, a right of action for tort is not the subject of garnishment. Annot., *Liability for Conversion of Property as the Subject of Garnishment by Creditor of the Owner,* 91 A.L.R. 1337, 1338 (1934). Thus, garnishment cannot be employed to reach or subject any debt or demand which the debtor, suing in his own name, could not recover in an action ex contractu. Here, Trane has apparently attempted to garnish Randolph on a conversion theory. Consequently, we hold the trial court properly dismissed this claim.

We also conclude the trial court correctly dismissed Trane's conversion action against Randolph. Trane is barred by res judicata from pursuing a second action on a conversion theory.

Res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.

*Rains v. State,* 100 Wn.2d 660, 663, 674 P.2d 165 (1983). Trane asserts the two actions differ because the second action was based on an assignment of rights from Transamerica. However, since the assignment was received prior to the first action, the claim which Trane now urges was available at the former trial. *Sweeney v. Frank Waterhouse & Co.,* 43 Wash. 613, 617, 86 P. 946 (1906). Consequently, Trane may not split its causes of action. *Sweeney,* at 617.

444

Reversed to allow recovery for unjust enrichment. Affirmed as to all other issues.

GREEN, C.J., and MUNSON, J., concur.