**DORSETT CARPET MILLS, INC., Appellant,**

v.

**WHITT TILE & MARBLE DISTRIBUTING CO., Appellee,**

v.

**Walter David HILL, et al.**

Supreme Court of Tennessee, at Jackson.

July 27, 1987.

David Blaylock, and Douglas M. Alrutz, Udelsohn, Blaylock & Marlow, P.C., Memphis, for appellant.

Wilbur C. Ruleman, Jr., Grady M. Garrison, Memphis, for appellee.

## OPINION

FONES, Justice.

We granted permission to appeal to consider the appropriate measure of damages in a cause of action predicated on an intentional commercial tort.

Dorsett Carpet Mills, Inc. [Dorsett], a Georgia carpet manufacturer, was a supplier of the Whitt Tile and Marble Distributing Company, Inc. [Whitt], a division of which wholesaled carpet products. On 30 April 1976, Dorsett filed suit in the Shelby County Circuit Court seeking the balance due for carpet sold on an open account to Whitt. Whitt subsequently filed a counter-claim and instituted a third party action against the former general manager of Whitt's carpet division, Walter David Hill [Hill].

On 19 November 1979, summary judgment was entered in favor of Dorsett on the Whitt account in the amount of $140,-036.45. The case ultimately came to a bench trial on Whitt's second amended counter-complaint and third party-complaint which advanced a variety of theories [1] for recovering damages allegedly sustained because of a secret kickback scheme between Dorsett and Hill.

In a memorandum filed on 16 August 1983, the trial court found that from May of 1973 until 31 March 1975 Dorsett paid monthly commissions to Hill, ostensibly to induce Hill to purchase and sell Dorsett products to the exclusion of other manufacturers. The court found that Whitt had no knowledge of these kickbacks. The court thus determined that "Hill had a personal stake in directing Whitt's carpet purchases to Dorsett, and Dorsett knowingly induced Hill's divided loyalty," and that "Whitt was injured and damaged as a result of the duplicitous conduct of Hill and Dorsett."

The trial court held that Dorsett had violated T.C.A. § 47–15–113 [2] [currently § 47–50–109] by procuring a breach of the employment contract between Hill and Whitt. The trial court utilized the salary and expenses paid to Hill during his two years of disloyal service, ultimately calculated to be $51,509.14, as the measure of damages. This amount was trebled pursuant to the statute, bringing the judgment against Dorsett to $154,527.42. The trial court also rendered a judgment against both Dorsett and Hill for the amount of

---

1. The complaint included counts of fraud, civil conspiracy, intentional interference with business relations, inducing breach of fiduciary duty, procuring breach of contract, state antitrust violations, and breach of contract.

2. 47–50–109. *Procurement of breach of contracts unlawful—Damages.*—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract; and the party injured by such breach may bring his suit for the breach and for such damages.

secret commissions. Although the court's memorandum stated that this judgment was based on fraud, the amount of commissions, ultimately calculated to be $30,991.20, was also trebled.

On appeal, the Court of Appeals upheld the utilization of Hill's salary and expenses as the appropriate measure of damages under T.C.A. § 47–50–109. The court held, however, that Dorsett was not liable for the secret commissions paid to Hill. Instead, the court held that Hill alone should be required to "make redress for the wrongs that he had committed" by paying the amount he received in secret commissions to Whitt. The court further held that the judgment against Hill should not be trebled because only the party procuring the breach of contract, *i.e.* Dorsett, could be held liable for treble damages under the statute.

We granted Dorsett's application for permission to appeal to consider whether the appropriate measure of damages has been applied in the award against that defendant.

The procurement of a breach of contract was a tort at common law and the legislature's enactment of T.C.A. § 47–50–109 merely codified that cause of action. *See Emmco Ins. Co. v. Beacon Mutual Indem. Co.*, 204 Tenn. 540, 322 S.W.2d 226 (1959). The statute does not address the basic measure of damages for the tort, but mandates the trebling of "the amount of damages resulting from or incident to the breach of the contract." *Dukes v. Brotherhood of Painters*, 191 Tenn. 495, 235 S.W.2d 7 (1950) is the only Tennessee case wherein a measure of damages for the tort of inducing a breach of contract has been articulated. Dukes was a painter and had been a member of the local union for twelve years. He sued the union and several individuals alleging that they conspired to deprive him of his livelihood. In pursuit of that plan they allegedly informed his employer that he had been expelled from the union, which statement was false; and that unless he was discharged there would be a strike on the job. The trial court sustained a demurrer to Dukes' declaration but this Court reversed, holding that the declaration stated a cause of action for inducing the employer to break the contract of employment with Dukes. In remanding for a trial on the merits, the Supreme Court had this to say about damages:

We think that a fair statement as to the measure of damages under the situation here presented is: "The measure of damages for unlawfully procuring the discharge of an employee is based on the direct and proximate results of the wrongful acts of defendant, and not on the breach of the contract of employment, and ordinarily plaintiff may recover the amount which would have been earned by him except for defendant's interference, less such sums as were actually earned at other employments." 57 C.J.S., Master and Servant, § 632, p. 439. *Id.* at 10.

■ That measure of damages obviously cannot be literally applied where the injured plaintiff is an employer engaged in business. However, the basic principle that the damages awarded to the plaintiff must be based on the direct and proximate result of the wrongful acts of the person procuring the breach of contract, remains viable.

■ Where the injury involved is interference with a business relationship, the plaintiff's loss of profits that result from the wrongful act are a proper item to be included in the measure of damages. *See McRoberts Protective Agency Inc. v. Lansdell Protective Agency Inc.*, 61 A.D.2d 652, 403 N.Y.Supp.2d 511 (1978); *National Merchandising Corp. v. Leyden*, 370 Mass. 425, 348 N.E.2d 771 (1976); *Coonis v. Rogers*, 429 S.W.2d 709 (Mo.1968) and cases cited in 45 Am.Jur.2d *Interference* § 58. There may be other losses suffered by plaintiffs directly and proximately resulting from the wrongful interference that should be included within the measure of damages and for that reason, it is neither possible nor appropriate to articulate an inflexible measure of damages for interference with business relationships in general or for the more limited factual situation involved in the instant case. The measure

of damages for this tort in Restatement (Second) of Torts § 774A is as follows:

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

(2) In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.

In comment d to § 774A of the Restatement (Second) of Torts the following appears: "The tests for legal causation [of damages] for the tort of interference with contract ... have not been reduced to precise rules."

■ Some authorities have allowed business plaintiffs who were victims of interference with their contractual relations a recovery based in part upon profits realized by the defendant procurer of the breach. *See Phillips Chemical Co. v. Morgan,* 440 So.2d 1292 (Fla.App.1983), petition for review denied 450 S.2d 486 (Fla.1984); and *Schechter v. Friedman,* 141 N.J.Eq. 318, 57 A.2d 251 (1948). While we will not rule out the possibility of the use of such a measure in some factual situations, we are of the opinion that generally the lost profit element of damage must be measured by the loss sustained by the plaintiff's business and not by its effect upon defendant's business.

In the present case, the carpet division of the Whitt Tile and Marble Company was a wholesale distributor. As general manager of this division, Hill's duties included purchasing carpet products from various manufacturers, as well as selling those products to retail establishments.

Beginning in May of 1973 and continuing until Hill's resignation from Whitt on 31 March 1975, Dorsett, a manufacturer-supplier of Whitt, paid three forms of secret commissions to Hill. First, Hill received a 2% commission on all purchases of Dorsett carpet by Whitt. Second, a system was established whereby Whitt's salespersons could make "direct sales" of Dorsett carpet straight from the mill without taking the carpet into Whitt's inventory. Whitt received a commission for sales consummated in this manner. Simultaneously with a reduction of Whitt's commission from 6% to 4%, Hill began receiving a 2% commission on all of Whitt's direct sales. Third, Whitt would sell certain styles of Dorsett carpet, which were not kept in Whitt's inventory, only through special order. When Hill sold this style of carpet, however, Dorsett directly paid Hill a 3% commission and nothing was paid to Whitt.

■ T.C.A. § 47–50–109 renders it "unlawful for any person by inducement, persuasion, misrepresentation or other means to induce or procure the breach or violation, refusal, or failure to perform any lawful contract by any party thereto...." The statute declares that "the person so procuring the [breach] shall be liable in treble the amount of damages resulting from or incident to the breach of contract...." Thus, only Dorsett, as the procurer of the breach, is liable to Whitt under the statute and only the damages appropriate to be awarded against Dorsett may be trebled.

■ The trial court and the Court of Appeals based the judgment against Dorsett upon the salary and expenses Whitt paid Hill during the period of his duplicitous conduct. This element of Whitt's loss was the direct and proximate result of Hill's wrongful act and is an appropriate element of damage to compensate plaintiff for the employee's tort, and in our opinion an inappropriate element of damage to charge against the procurer of the breach.

The direct and proximate loss sustained by Whitt as a result of Dorsett's wrongful act was the reduction of Whitt's commission from 6% to 4% and the diversion of 2% to Hill.

Inherent in Hill's fiduciary duty as a purchasing agent and salesman for Whitt was an obligation to ensure that his employer's profit margin was maximized. *See Memphis & Arkansas River Packet Co. v. Agnew*, 132 Tenn. 265, 177 S.W. 949 (1915). Not only did Dorsett's kickbacks cause Hill to breach this duty, but also Whitt suffered damages, by paying more and receiving less (or nothing at all), in the precise amount of the secret commissions. In other words, had Dorsett not paid this money to Hill, it may be presumed that these funds would have inured to the benefit of Whitt in the form of lower prices or greater commissions.

Therefore, the $30,991.20 in secret kickbacks received by Hill were damages sustained by Whitt as a direct and proximate consequence of the wrongful interference by Dorsett. This element of damages is trebled pursuant to T.C.A. § 47–50–109.

In the complaint upon which this case was tried, Whitt also sought damages for "the loss of profits that reasonably could be anticipated had the time expended by Hill and Whitt's salesmen been devoted to the business of Whitt and not to the unlawful devotion to the business of Dorsett and Hill," as well as for the general demise of Whitt's carpet division. There was a reference to a master and a substantial amount of proof adduced upon Whitt's claim of lost profit. The master's report contained no positive findings of lost profits by Whitt nor did the opinion of the trial judge.

Although there is evidence that during the two years of devious conduct Whitt's carpet suppliers dwindled from at least sixteen to two, there is no evidence the prices charged or commissions paid by Dorsett were commercially unreasonable.

However, we find that the evidence clearly supports an additional item of lost profit sustained by Whitt as a direct and proximate result of Dorsett's use of Hill's services.

Plaintiff proved that in 1974 Hill, while still employed by Whitt, sold Dorsett carpet in the total sum of $91,312.04 for which he was paid a 3% commission by Dorsett and Whitt was paid nothing. Whitt did not know anything about those sales until after the litigation was instituted and did not receive the 4% commission that Dorsett remitted to Whitt on all other sales. The $91,312.04 sales of carpet are referred to in the record as the "Magic Touch and other accounts commission" and a 3% commission on that sum was included in the total secret commission paid Hill of $30,991.20. However, the lower courts have found and we agree that but for Dorsett and Hill's duplicity, Whitt would have been paid a 6% commission on all sales. It follows therefore that Whitt is entitled to recover an additional 3% of $91,312.04 from Dorsett and to have that sum trebled.

In lieu of the judgment awarded against Dorsett in the Court of Appeals, a judgment will be awarded Whitt against Dorsett in the sum of $102,091.68 for the reasons stated herein. Interest upon that sum is awarded plaintiff from and after the date of the filing of its cross-complaint against Dorsett. See 1 Gibson's Suits in Chancery § 605 (5th ed. 1956), T.C.A. § 47–14–123 and *Webb Sumner Oil Mill v. Lovitt*, 7 Tenn.App. 568 (1928).

This case is remanded to the trial court for the enforcement of the judgment. Costs in this Court only will be adjudged one-half against Dorsett and one-half against Whitt. All other costs remain as adjudged by the lower courts.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.