**Developers Three**
**v.**
**Nationwide Ins. Co.**
*[Cite as 2 AOA 539]*

*Case No. 89AP-364*
*Franklin County, (10th)*
*Decided March 13, 1990*

*R.C. 1775.08*

*Mr. Charles E. Taylor; Inscore, Rinehardt, Whitney And Enderle Co. L.P.A., and Mr. Larry L. Inscore, for plaintiff-appellant.*

*Wesp & Osterkamp and Mr. Kevin J. Osterkamp, for defendants-appellees.*

BRYANT, J.

Plaintiff-appellant, Developers Three, appeals from a judgment of the Franklin County Common Pleas Court, while defendants-appellees conditionally cross-appeal from a directed verdict on the issue of liability. Defendant's cross-appeal is "conditional in the sense that they will waive the cross-appeal if this court overrules plaintiff's assignments of error and affirms the judgment of the trial court.

In 1980, plaintiff, Developers Three, was a general partnership consisting of at least three partners. As detailed in our previous opinion in this case, *Developers Three* v. *Nationwide Ins. Co.* (Jan. 15, 1985), Franklin App. Nos. 83AP-476 and 83AP-718, unreported (1985 Opinions 74), plaintiff owned options to purchase a parcel of land in downtown Columbus. Plaintiff had until August 14, 1980 to exercise the options, after which plaintiff had sixty days in which to finance purchase of the property. On August 14,

two of plaintiff's partners, James Foley and Stephen Harris, voted to sell the options to defendant Nationwide Development Company, through Nationwide's agent John W. Galbreath & Company. Nationwide Development agreed to purchase the options for $650,000 and purchase the underlying property for $1,928,796, for a total purchase price of $2,578,796.

On November 12, 1980, Foley and Harris consummated the sale to Nationwide Development, despite the fact that partner Julius Margulies and Philip Bradley, an attorney associated with the partnership who claimed a partnership interest, disapproved of the transaction. Margulies and Bradley subsequently brought suit in plaintiff's name against various defendants, primarily seeking rescission of the conveyance. In 1983, the Franklin County Common Pleas Court found in favor of defendants. Plaintiff appealed to this court, which found that plaintiff, having ratified the transaction, could not rescind the conveyance or challenge Nationwide Development's title. We did, however, remand the case for trial of plaintiff's tort claims against defendant Nationwide Development and defendant Nationwide Mutual Insurance Company.

The trial court on remand granted a directed verdict in favor of plaintiff on the issue of liability in a trial conducted in December 1988. The jury, though, found that defendants owed plaintiff no damages. Plaintiff appeals to this court, assigning the following seven errors:

"1. The trial court erred and abused its discretion in denying leave to plaintiffs to file their tendered Supplemental Amended Complaint setting forth defendant's post-conveyance conduct and events affecting damages recoverable by plaintiffs.

"2. The trial court erred in excluding evidence of Nationwide's unjust enrichment represented by its exploitation of the property as evidence of damage.

"3. The trial court erred in refusing as to compensatory damages to instruct the jury as requested by plaintiffs and in overruling plaintiffs' objections to the charge.

"4. The trial court erred and abused its discretion in refusing to enforce its order *in limine* precluding defendants from commenting or offering evidence pertaining to specified irrelevant matters.

"5. The trial court erred in not granting partial judgment notwithstanding the verdict for the minimum benefits accruing to defendants from their tortious acquisition of plaintiffs' property.

"6. The judgment in favor of Nationwide is against the manifest weight of the evidence.

"7. The trial court erred and abused its discretion in refusing as to punitive damages to instruct the jury as requested by plaintiffs."

Plaintiff's primary contention in its first, second, third, fifth, and sixth assignments of error is that, irrespective of the amount of plaintiff's actual loss, plaintiff may recover under an unjust enrichment theory the amount of defendant's profits from commission of the tort in issue. Plaintiff explicitly disclaims a measure of damages based upon its lost profits or lost expectancy. Defendants, on the other hand, contend that plaintiff's recovery of defendants' profits would not be appropriate because plaintiff's actual loss is much less than defendants' gain. Specifically, defendants argue that plaintiff did not have defendants' ability to develop the property in question.

Before addressing the merits of the parties' arguments, however, we will discuss the cause or causes of action under which plaintiff seeks to recover damages. In the course of directing a verdict in plaintiff's favor on the issue of liability, the trial court stated that "[p]laintiffs', the Developers Three's, cause of action is that Nationwide Development Company wrongfully induced Foley and Harris to breach their fiduciary duties to the Plaintiffs." Plaintiff, in its reply brief, argues that Foley and Harris breached their duty, and that defendants' inducing the breach was "constructively fraudulent," thereby rendering defendants liable as well. Plaintiff cites *Hulett* v. *Fairbanks* (1883), 40 Ohio St. 233, and *Sterman* v. *Ziem* (Cal. App. 1936), 62 P. 2d 160, in support. Plaintiff, however, also cites cases in which parties sued for conspiracy or for tortious interference with contract. See *Minark* v. *Nagy* (1963), 8 Ohio App. 2d 194 (conspiracy); *Reichman* v. *Drake* (1951), 89 Ohio App. 222, 226; *Leibovitz* v. *Central National Bank* (1944), 75 Ohio App. 25 (tortious interference with contract). Paragraph twenty-two of plaintiff's first amended complaint alleged that defendants "maliciously conspired to interfere with the valuable contractual rights and expectancies of plaintiffs ***."

Ultimately, we conclude that we can best characterize plaintiff's claim as one for tortious interference, as this court did in the first appeal of this case. See *Developers Three* v. *Nationwide Ins. Co., supra,* at 78. Section 766 of the Second

Restatement of Torts defines "Intentional Interference with Performance of Contract by Third Person" as follows:

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." 4 Restatement of the Law 2d, Torts (1979) 7, Section 766.

See, also, *Donald G. Culp Co.* v. *Reliable Stores Corp.* (1983), 14 Ohio App. 3d 161 163 (citing section 766 of the Restatement); *Reichman, supra*, at 226 (citing First Restatement of Torts). A difficulty arising from application of section 766 to the present case is the fact that the fiduciary duty that partners Foley and Harris allegedly breached did not derive from a specific provision of the partnership agreement but from R.C. 1775.08, which defines an individual partner's scope of authority. Nevertheless, we find that plaintiff's cause of action is sufficiently analogous to the cause of action stated in Section 766 of the Restatement to permit a court to analyze plaintiff's claims under tortious interference with contract principles, since the Restatement's definition of tortious interference substantially encompasses plaintiff's allegations of inducing a breach of a duty.

In regard to the unjust enrichment issue, the Ohio Supreme Court has stated that unjust enrichment occurs when a person "has and retains money and benefits which in justice and equity belong to another." *Hummel* v. *Hummel* (1938), 133 Ohio St. 520, 528. However, Ohio courts have apparently not yet addressed the issue of unjust enrichment in tortious interference cases. Similarly, the Restatement of Torts does not mention unjust enrichment in its section on damages for tortious interference. Restatement of Torts, *supra*, at 54, Section 774A. The Restatement of Restitution generally recognizes actions for the recovery of unjust enrichment in cases in which benefits have been tortiously acquired, Restatements of the Law, Restitution (1937), 522, Section 128 *et seq*; however, the Restatement of Restitution explicitly "takes no position as to a person's duty of restitution to another where the first person has made a profit by tortiously causing a third person to break his contract with the

other." Restatement of Restitution, *supra*, at 549, Section 133.

In jurisdictions other than Ohio, several courts have not been as noncommittal as the American Law Institute's Restatements and have permitted an unjust enrichment recovery in a tortious interference action. See, *e.g., Zippertubing Co.* v. *Teleflex Inc.* (C.A.3, 1985), 757 F. 2d 1401, 1411-1412; *Second Natl. Bank* v. *M. Samuel & Sons, Inc.* (C.A.2, 1926), 12 F. 2d 963, 967-968, certiorari denied (1926), 273 U.S. 720; *Colorado Interstate Gas Co.* v. *National Gas Pipeline Co.* (D. Wyo. 1987), 661 F. Supp. 1448, 1478-1479 reversed on other grounds (1989), 885 F. 2d 683, 697; *Federal Sugar Refining Co.* v. *United States Sugar Equalization Board* (S.D.N.Y. 1920), 268 F. 575, 582-583; *National Merchandising Corp.* v. *Leyden* (Mass. 1976), 348 N.E. 2d 771, 775-776; *Caskie* v. *Philadelphia Rapid Transit Co.* (Pa. 1936), 184 A. 17, 18-19. Other courts have not permitted an unjust enrichment recovery. See, *e.g., Marcus, Stowell & Beye Government Securities, Inc.* v. *Jefferson Investment Corp.* (C.A.5, 1986), 797 F. 2d 227, 232; *American Air Filter Co.* v. *McNichol* (C.A.3, 1975), 527 F. 2d 1297, 1300. Cf. *Dorset Carpet Mills, Inc.* v. *Whitt Tile & Marble Distributing Co.* (Tenn. 1987), 734 S.W. 2d 322, 325 ("White we will not rule out the possibility of the use of such a measure in some factual situations, we are of the opinion that generally the lost profit element of damage must be measured by the loss sustained by the plaintiff's business and not by its effect upon defendant's business."). See, generally, Annotation, Recovery Based on Tortfeasor's Profits in Action for Procuring Breach of Contract (1981), 5 A.L.R. 4th 1276; Comment, Plaintiff's Measure of Recovery for Tortious Inducement of Breach of Contract-- Profits or Losses? (1968), 19 Hastings L.J. 1119, 1120.

The usual justification for awarding a defendant's unjust enrichment to the plaintiff is that "an intending tortfeasor should not be prompted to speculate that his profits might exceed the injured party's losses, thus encouraging commission of the tort." *National Merchandising, supra*, at 776. See, also, *Zippertubing, supra*, at 1411. This view is consistent with the Restatement of Restitution's general rules for the measure of recovery in a restitution action:

"Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled, or if this is not done,

causing the defendant to pay the plaintiff an amount which will restore the plaintiff to the position in which he was before the defendant received the benefit. If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions or restitution are not punitive. In fact, however, the plaintiff frequently has lost more than the defendant has gained, and sometimes the defendant has gained more than the plaintiff has lost.

"In such cases the measure of restitution is determined with reference to the tortuousness of the defendant's conduct or the negligence or other fault of one or both of the parties in creating the situation giving rise to the right to restitution. If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefitted. *If he was consciously tortious in acquiring the benefit, he is also deprived of any profit derived from his subsequent dealing with it.* If he was no more at fault than the claimant, he is not required to pay for losses in excess of benefit received by him and he is permitted to retain gains which result from his dealing with the property." (Emphasis added.) Restatement of the Law, Restitution (1937), 595-596, Introductory Note to Section 150 *et seq.*

See, also, *Olwell* v. *Nye & Nissen Co.* (Wash. 1946), 173 P. 2d 652, 654 (quoting the Restatement). In contrast, the courts opposing a recovery of a defendant's profits emphasize the fact that "[t]o compel defendant to disgorge [its] profits could give plaintiff a windfall and penalize the defendant. ***" *American Air Filter, supra,* at 1300. See, also, *Marcus, Stowell & Beye Government Securities, supra,* at 232.

Both arguments have merit. We recognize the incongruity of a court labeling a defendant's conduct as wrongful and yet permitting the defendant "to retain some part of his ill gotten gains. "*National Merchandising, supra,* at 776. On the other hand, there is also something incongruous about putting a plaintiff in a better position than if no tort had been committed, since "the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort." 4 Restatement of Torts, *supra,* at 452, Section 901, comment a.

On balance, we find the arguments against recovery of a defendant's profits more persuasive than the arguments in favor. We are reluctant to abandon a purely compensatory damage formula unless policy and precedent clearly support an unjust enrichment theory of recovery. We conclude that neither supports such a recovery in this instance. First, an award of defendant's profits is not the only means of discouraging a tortfeasor from interfering with a business relationship while calculating that his profits will exceed the injured party's losses. In some cases, a defendant's conduct will make him susceptible to an award of punitive damages. See *Reichman, supra,* at 229 (availability in Ohio of punitive damages in a tortious interference action); Annotation, Punitive Damages for Interference with Contract or Business Relationship (1986), 44 A.L.R. 4th 1078. In fact, punitive damages may serve well to counterbalance the unavailability of an unjust enrichment theory in tortious interference cases. See *Marcus, Stowell & Beye Government Securities, supra,* at 232 ("Where an interfering party's conduct is particularly egregious, [punitive damages are] a device to deprive the wrongdoer of those profits obtained by the wrongful conduct.").

Although, as indicated by our discussion of the seventh assignment of error below, in the absence of an unjust enrichment theory, courts will not be able to routinely punish all tortfeasors by allowing a recovery of defendant's profits, courts may use punitive damages in selected cases to punish tortfeasors who consciously disregard the rights of others with the great probability of causing substantial harm. Cf. *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, syllabus ("conscious disregard" as a predicate for punitive damages). Thus, in the appropriate case, punitive damages will serve the same function as an unjust enrichment recovery.

Furthermore, the cases that permit an unjust enrichment recovery in a tortious interference action have not clearly advocated a noncompensatory measure of recovery, aside from the early case of *Federal Sugar Refining, supra.* Admittedly, the cases speak in terms of "unjust enrichment," a restitutionary measure of recovery that may differ from traditional tort damages. See 4 Restatement of Torts, *supra,* at 454, Section 903, comment b. However, the cases do not squarely confront the possibility of a plaintiff recovering the defendant's profits that exceed the plaintiff's actual loss.

For example, one prominent case, *National Merchandising, supra,* found that it could characterize the trial court's judgment as roughly equal to the defendant's profits from

commission of the tort *or* the plaintiff's lost profits. *Id.* at 774-775. Apparently, then, the *National Merchandising* court viewed an unjust enrichment recovery as an alternative measure of compensatory damages. Thus, unlike this court, the Supreme Judicial Court of Massachusetts in *National Merchandising* did not face the "windfall" problem. See, also, *Zippertubing, supra,* at 1411 ("In most instances the amount of plaintiff's loss and defendant's gain is the same.").

Moreover, although the Restatement of Restitution's general rules for determining the measure of recovery seemingly permit a windfall to the plaintiff "[i]f the defendant was consciously tortious in his acquisition of the benefit," Restatement of Restitution, *supra,* apparently no court has fully adopted the Restatement's position in a tortious interference case, much like the authors of the Restatement itself, who, as we have previously noted, take no position on whether the Restatement's measure of recovery is available in a tortious interference action. See Restatement of Restitution, *supra,* at 549, Section 133. The court in *Olwell, supra,* cited extensively from the Restatement; however, the *Olwell* court believed that the Restatement formula was compatible with a compensatory theory of recovery and thus would not create a windfall for the plaintiff or penalize the defendant. In *Olwell,* the tort arose from the defendant's use of the plaintiff's property. The defendant therein argued that its use of the property did not damage the plaintiff. The court rejected the defendant's argument:

"However plausible, the appellant cannot be heard to say that his wrongful invasion of the respondent's property right to exclusive use is not a loss compensable in law. To hold otherwise would be subversive of all property rights since his use was admittedly wrongful and without claim of right. The theory of unjust enrichment is applicable in such a case." *Id.* at 654.

The court in *Olwell* was essentially interpreting an unjust enrichment recovery as compensation for the plaintiff's loss.

In sum, we conclude that the arguments supporting a recovery of a defendant's profits in this tortious interference action do not outweigh the policies embodied in a traditional tort measure of damages. In addition, we find that no well-established restitutionary doctrine supports noncompensatory recovery herein (although noncompensatory damages in the form of punitive damages are available in appropriate cases). Accordingly, plaintiff's correct measure of

damages in this tortious interference action is the plaintiff's loss (including lost profits) that arises out of the tortious interference, not the defendant's gain. See *National Merchandising, supra,* at 774 (plaintiff's lost profits). See, also, *Davison Fuel & Dock Co.* v. *Pickands Mather & Co.* (1977), 54 Ohio App. 2d 177, 181. (In an action based upon a tortious interference with contractual relations, a plaintiff may, upon competent proof, recover any and all damages proximately caused by the tortfeasor's misconduct.)*Dorset Carpet Mills, supra,* at 324.

We overrule plaintiff's first, second, third, fifth, and sixth assignments of error to the extent we find that the trial court was correct in not permitting a recovery based upon defendant's profits.

We next address the remaining issues in plaintiff's assignments of error. Plaintiff's first assignment of error addresses the court's denying plaintiff leave to file its "Supplemental Amended Complaint." After this court reversed the trial court's summary judgment determination in 1985, plaintiff sought to plead that (1) certain parties were dismissed from the case voluntary; (2) this court dismissed another party in our opinion in plaintiff's first appeal; (3) this court had found that Nationwide had title to the property; (4) Nationwide or its successors began building a hotel and parking garage on the site; and (5) the building of the hotel had previously been planned for another location, which became free for other development when Nationwide acquired plaintiff's property.

Plaintiff refers to the contested pleading as an amendment of its earlier complaint; however, since the subsequent complaint refers solely to matters that occurred during the pendency of the action, the complaint was a supplemental, rather than amended, pleading under Civ. R. 15(E). See *United States* v. *Vorachek* (C.A.8, 1977), 563 F. 2d 884, 886 (difference between amended and supplemental pleading). The allowance of supplemental pleading under Civ. R. 15(E) is within a trial court's discretion. 6 Wright & Miller, Federal Practice and Procedure (1971), 542-543, Section 1504. Furthermore, a trial court does not abuse its discretion in denying leave to file a supplemental pleading unless prejudice results from the denial. See *Johnson* v. *General Tire & Rubber Co.* (Apr. 18, 1985), Franklin App. No. 84AP-130, unreported (1985 Opinions 1086, 1090); Civ. R. 61 (harmless error). Here, plaintiff has alleged no prejudice from the denial, except the prejudice resulting from the fourth and fifth

items, which related to the measure of damages issue discussed previously in this opinion. Because the trial court's denial of leave to file a supplemental complaint did not prejudice plaintiff, aside from the items in the complaint that related to the measure of damages issue, we also overrule plaintiff's first assignment of error as it pertains to the first three new items in the supplemental complaint.

In its fourth assignment of error, plaintiff argues that the trial court erred by not enforcing its order granting plaintiff's motion *in limine*. A motion *in limine* generally prohibits the parties from referring to prejudicial matter before the trial court has ruled upon its admissibility. *Riverside Methodist Hosp. Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308, 310. In the present case, plaintiff objects to the court's failure to enforce the order during defendant's opening statement. However, even if a court has sustained a motion *in limine* and a party has violated the court's order, no reversible error occurs unless the reference to matter in the motion *in limine* has actually prejudiced the objecting party. See Gaines v. *State* (Ind. App. 1983), 456 N.E. 2d 1058, 1060. Cf. *Caserta* v. *Allstate Ins. Co.* (1983), 14 Ohio App. 3d 167, 170-171 (failure to sustain motion *in limine* is reversible error only if the failure prejudices movant.) The allegedly prejudicial matter in the present case consisted of references to plaintiff's lack of alternatives to a sale to Nationwide. However, evidence of plaintiff's inability to sell the property was relevant to the measure of damages. More particularly, if plaintiff did not have the resources to pursue its options and had no reasonable alternative except selling to Nationwide, and if Nationwide paid fair market value for the property, then plaintiff suffered no tangible loss from the tortious interference. Since this evidence, despite plaintiff's contentions at trial, was relevant, plaintiff did not suffer prejudice from defendant's statements. We therefore overrule plaintiff's fourth assignment of error.

In its sixth assignment of error, besides arguing that it is entitled to unjust enrichment damages, plaintiff alleges that, even if the measure of damages is fair market value as of November 1980, the jury's determination that defendant paid fair market value was against the manifest weight of the evidence.

At trial, each witness seemed to value the property differently. One of plaintiff's witnesses, Theodore Mandigo, testified that the property had a "land value" of $4.5 million to $6 million in June 1980. Philip Bradley testified that the property was worth $8 million. Plaintiff's expert appraiser valued the property at $4.1 million.

Plaintiff, however, directs us to the testimony of defendants' expert appraiser, Lowell Norris, who, at one point, testified that the value of the land was $2.7 million. Since Nationwide paid less than $2.6 million for the property, plaintiff argues, the jury's determination that plaintiff received fair market value is against the manifest weight of the evidence. Norris, though, also testified that, using a different method of valuation, the site had a value of $2.3 million. Ultimately, Norris concluded that Nationwide paid fair market value for the property.

An appellate court will not reverse a judgment as against the weight of the evidence if competent, credible evidence supports the judgment. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus. We find that Norris's method and his final opinion constituted competent, credible evidence. Although other witnesses placed different interpretations upon the evidence, the resolution of conflicting evidence is generally a matter for the trier of fact. *G. F. Business Equip., Inc.* v. *Liston* (1982), 7 Ohio App. 3d 223, 225-226. Because competent, credible evidence supports the jury's verdict, we overrule plaintiff's sixth assignment of error to the extent that it includes the argument that the jury's determination of fair market value was against the manifest weight of the evidence.

In its seventh assignment of error, plaintiff asserts that the trial court erred by refusing to instruct the jury that it could award punitive damages. As we have noted previously in this opinion, punitive damages are recoverable in a tortious interference action and may, from a policy standpoint, sometimes serve as an alternative to an unjust enrichment recovery. However, a trial court may instruct on punitive damages only if plaintiff proves "actual malice," defined as either "*** (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston* v. *Murty, supra*, at syllabus. See, also, *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 137.

In the present case, we conclude that the trial court did not err by refusing to instruct on punitive damages, since plaintiff did not present sufficient evidence of actual malice on the part

of defendants or present evidence that the tort was committed in such a way as to demonstrate conscious disregard. Plaintiff cites testimony regarding unfriendly statements that Robert Spellman, a Nationwide representative, made in 1979. Plaintiff, though, does not link the isolated statements of Spellman to any policy of Nationwide as a whole or to the final transaction between the parties in 1980. Plaintiff also emphasizes the agreement between Lawyers Title Company and plaintiff to place $50,000 of the purchase price of the options in escrow until Julius Margulies signed the deed. Even if one considers the escrow agreement as a malicious act, however, plaintiff cites no testimony identifying defendants as the impetus behind the escrow agreement. In fact, Richard Pickett, Galbreath Company's attorney in 1980, testified that Nationwide did not play a role in the escrow agreement. Lastly, plaintiff cites an agreement between Nationwide and plaintiff that limited Nationwide's remedies if plaintiff did not convey good title. However, we find that reasonable jurors would have difficulty construing an agreement limiting plaintiff's potential liability as an act characterized by "hatred, ill will or a spirit of revenge" or as having a "great probability of causing substantial harm." Accordingly, we overrule plaintiff's seventh assignment of error.

Because we have overruled plaintiff's assignments of error, we need not address the issues in defendant's conditional cross-appeal. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and WOLFF, JJ., concur.

WOLFF, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.