**HERMES ASSOCIATES, Plaintiff and Appellee,**

v.

**PARK'S SPORTSMAN, Defendant and Appellant.**

No. 900299–CA.

Court of Appeals of Utah.

June 18, 1991.

---

Jackson Howard (argued), Kevin J. Sutterfield, Leslie W. Slaugh, Howard, Lewis & Petersen, Provo, for defendant and appellant.

Nick J. Colessides (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

JACKSON, Judge:

Appellant appeals from a judgment awarding appellee principal and prejudgment interest on a "Lease Cancellation Agreement." We affirm.

### FACTS

Hermes Associates (Hermes) operates a shopping center known as The Family Center at Midvalley, located in Salt Lake County, Utah. On May 20, 1982, Park's Sportsman (Park) leased 13,500 square feet of space at The Family Center. Park operated its retail sporting goods store at The Family Center until April 1987. Hermes and Park agreed to terminate the lease and executed a Lease Cancellation Agreement on April 2, 1987.

The Lease Cancellation Agreement provided that obligations under the lease would terminate when a lease agreement between Hermes and a new tenant, Gart Brothers Sporting Goods, Inc. (Gart), became effective. The parties agreed that beginning on May 1, 1987, Park would pay to Hermes $1,000 per month for sixty months or until Gart made a percentage rental payment exceeding $10,000 in any twelve-month period. When Gart made a percentage rental payment exceeding $10,000, Park's obligation to pay $1,000 per

month would end and Hermes would refund to Park the amount it paid, up to $12,000, during the previous twelve-month period.

Hermes entered into a lease agreement with Gart on April 7, 1987, for 13,500 square feet. The rent was fixed at a minimum of $54,000 per year plus three percent of the annual gross receipts in excess of $1,800,000. Park was not a party to this agreement, and therefore was not notified of the lease terms. On October 26, 1987, Hermes and Gart amended their lease agreement without notice to, or consent of, Park. The amount of lease space increased to 20,820 square feet, the minimum rent increased to $96,972 per year, and the breakpoint for calculating the percentage rent increased to $3,232,400.

Park made eleven $1,000 monthly payments in accordance with the terms of the Lease Cancellation Agreement; Park did not pay the April 1, 1988 payment or any thereafter. Park contacted Hermes for information regarding Gart's gross receipts; Hermes stated that it could not provide Gart's sales figures due to the terms in its lease with Gart. Hermes, however, did state that it had not received any percentage rental payments from Gart. When Park did not make any further payments, Hermes sued for the sum due under the Lease Cancellation Agreement. The trial court awarded judgment to Hermes in the sum of $22,000 plus $2,189.92 in prejudgment interest.

## ISSUES

Appellant has raised three issues: (1) whether the trial court erred, as a matter of law, in holding that Park did not assume the role of surety for Gart's obligations; (2) whether the trial court erred, as a matter of law, in awarding Hermes prejudgment interest; and (3) whether the trial court erred, as a matter of law, in holding that it did not have the discretion to award Park attorney fees.

## STANDARD OF REVIEW

■ The trial judge concluded there was no surety relationship as a matter of law, focusing only on the words of the contract without resort to extrinsic evidence of intent. We therefore review the trial court's action under a correctness standard. *See Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *accord 50 West Broadway Assocs. v. Redevelopment Agency*, 784 P.2d 1162, 1171 (Utah 1989); *Prudential Capital Group Co. v. Mattson*, 802 P.2d 104, 106 (Utah App.1990). Appellant's prejudgment interest issue is a question of law which we review for correctness. *See Vali Convalescent & Care Insts. v. Division of Health Care Financing*, 797 P.2d 438, 444 (Utah App.1990).

## CREATION OF SURETY RELATIONSHIP

■ Park argues that it was placed in a surety role of answering for Gart's rental obligations by guaranteeing that Hermes would receive a minimum sum from its lease with Gart. As a surety of Gart's lease, Park argues that its obligations under the Lease Cancellation Agreement ceased when Hermes and Gart amended their lease without Park's consent.

Park appeals the legal conclusion that it was not a surety of the Gart lease. Suretyship is defined as "a contractual relationship in which one party engages to be answerable for the debt or default of another." *Trane Co. v. Randolph Plumbing & Heating*, 44 Wash.App. 438, 440, 722 P.2d 1325, 1328 (1986). *See generally Utah Technology Fin. Corp. v. Wilkinson*, 723 P.2d 406, 410 (Utah 1986). Park's argument, however, fails because neither the case law it cites nor the terms of the agreement support its position.

Park cites *Andrus v. Zion's First Nat'l Bank*, 99 Idaho 724, 588 P.2d 452 (1978) and *State v. McKinnon*, 667 P.2d 1239 (Alaska 1983) as illustrations of a surety relationship. However, in these cases, a surety relationship was created because one party explicitly agreed to be liable for a third party's debts. Park does not stand in a similar relationship to Gart; Park did not mortgage its property to secure Gart's

debt, nor did Park sign an agreement to be liable for Gart's rental payments.

Further, Park's position is untenable because the effect of the Lease Cancellation Agreement was not to make Park answerable for Gart's obligations in Gart's lease with Hermes. Gart and Hermes negotiated their own lease agreement; Park did not assign its 1982 lease to Gart. The Lease Cancellation Agreement was a separate contract and was not dependent on the lease between Hermes and Gart except for the termination and rebate provisions. Although Park would be released from its monthly payments when Gart made a percentage rental payment exceeding $10,000, Park's role was not to guarantee Gart's debt. If Gart had breached its lease agreement with Hermes, Park would not have been liable to pay Gart's minimum base rent, but Park would have still had to pay $1,000 per month as agreed. Since Park is not answerable for any default or debt of Gart, we conclude that Park was not a surety of the Gart lease. Thus, Park's obligation under the Lease Cancellation Agreement did not cease when Hermes and Gart amended their lease.

## PREJUDGMENT INTEREST

■ Park argues that it was excused from making monthly $1,000 payments because Hermes refused to give it the information necessary to calculate the amount due; thus, Park claims that the trial court erred in awarding Hermes prejudgment interest. To support its claim that no interest should be awarded when the delay is caused by the wrongful conduct of the party entitled to payment, Park cites *Amoss v. Bennion,* 23 Utah 2d 40, 456 P.2d 172 (1969) and *Blomquist v. Bingham,* 652 P.2d 900 (Utah 1982). However, *Amoss* and *Blomquist* are not on point because both cases involved buyers suing for specific performance of property sales agree-

ments where the sellers willfully refused to perform their contracts. In both cases the Utah Supreme Court adjusted the date interest would accrue on the unpaid balance of the purchase price.

Moreover, Hermes did not willfully refuse to perform its obligations under the Lease Cancellation Agreement, as Park claims.[1] According to Hermes's lease agreement with Gart, Hermes was bound to keep any information regarding Gart's gross receipts in strict confidence. While Hermes could not report Gart's sales figures as Park requested, Hermes did report that Gart had not made any percentage rental payments.

Under these circumstances, an award of prejudgment interest was appropriate since it "represents an amount awarded *as damages* due to the opposing party's delay in tendering the amount owing under an obligation." *Vasels v. LoGuidice,* 740 P.2d 1375, 1378 (Utah App.1987) (emphasis in original). The recovery of prejudgment interest has been allowed where "the loss is fixed as of a particular time and the amount of the loss can be calculated with mathematical accuracy." *Jorgensen v. John Clay & Co.,* 660 P.2d 229, 233 (Utah 1983) (citations omitted), *appeal after remand, Jorgensen v. Aetna Casualty & Sur. Co.,* 769 P.2d 809 (Utah 1988). In this case, the loss was "fixed" on April 1, 1988, when Park stopped making its monthly payments. The amount of loss, $1,000 per month, can be calculated with mathematical accuracy. Therefore, we conclude that the trial court properly awarded prejudgment interest to Hermes.

## ATTORNEY FEES

■ On November 14, 1989, Park filed a motion for summary judgment, which Hermes opposed because it was not filed in compliance with the applicable rules. *See*

---

1. In fact, Hermes's inability to provide documentation was found not to be willful by the trial court, and therefore did not excuse Park's performance. By ordering Hermes to notify Park of Gart's gross sales, the trial court may have indirectly indicated that prior to trial Hermes had not performed its obligations. However, the trial court made no finding that Hermes's failure excused Park's performance. The information Hermes did provide was sufficient to enable Park to continue performing its obligations under the Lease Cancellation Agreement.

Utah R.Civ.P. 56; Utah Code Jud.Admin. R4–501(3)(g). At the time the motion was filed, trial was scheduled for December 4, 1989. On November 17, 1989, the trial was rescheduled for January 11, 1990. Park did not renew its motion for summary judgment. At trial, Park requested attorney fees incurred since November 17, 1989, asserting that the case could have been decided on summary judgment since the facts were undisputed. Park based its request solely on Utah Code Ann. § 78–27–56 (Supp.1990): "(1) In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith. . . ." The trial court declined to award Park attorney fees, stating that while the case should have been decided on a motion where the parties could have stipulated to the facts, and the court could have then ruled on the question of law, no such motion was timely made by Park or by Hermes, and therefore, the court did not have discretion to award attorney fees.

On appeal, Park cites Utah R.Civ.P. 11 and section 78–27–56 to support its argument that the trial court had the discretion to award Park attorney fees. Because Rule 11 was not raised at trial, we do not address it here. *See Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 (Utah App.1991).

According to the plain language of section 78–27–56, three requirements must be met before the court shall award attorney fees: (1) the party must prevail, (2) the claim asserted by the opposing party must be without merit, and (3) the claim must not be brought or asserted in good faith. *See Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983). Park was not "the prevailing party" at any stage in the litigation; therefore, we do not need to consider whether the remaining requirements were met.[2] Because Park was not entitled to attorney fees under section 78–27–56, we do not reach the question of whether the trial

court had the discretion to award the non-prevailing party attorney fees for trial preparation when an action which might have been resolved on summary judgment went to trial.

The decision of the trial court is affirmed. We decline to award appellee attorney fees and costs on appeal.

BILLINGS and GREENWOOD, JJ., concur.

---

2. The trial court, however, did make the finding that the case was not frivolous. *See Jeschke v. Willis,* 811 P.2d 202 (Utah App.1991) (discussing statutory requirements for award of attorney fees). The record does not indicate if the trial court considered whether the action was not brought in good faith.